# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BARBARA LEONHARDT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-07-CV-0435 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:     Honorable Xavier Rodriguez**
**         United States District Judge**

### Introduction

Plaintiff Barbara Leonhardt brought this action for judicial review of the final decision of
the Commissioner of the Social Security Administration (the Commissioner), determining that
Leonhardt is not disabled for the purposes of the Social Security Act (the Act) and denying
Leonhardt's application for Supplemental Security Insurance (SSI) benefits.  Leonhardt asks the
district court to reverse the Commissioner's decision and to render judgment in her favor.  In the
alternative, Leonhardt asks the district court to reverse the decision and remand the case for further
proceedings.

After considering Leonhardt's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 13.

Commissioner's decision,[2] Leonhardt's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record in this case, Leonhardt exhausted her administrative remedies prior to filing this action in federal court. Leonhardt applied for SSI on April 22, 2203, alleging disability beginning April 1, 1995.[5] Although she did not identify a triggering event or condition for this date, it appears to be linked to the death of her husband in 1995. Leonhardt complains about suffering from depression and going down-hill since the death of her husband in 1995. The Commissioner denied the application initially and on reconsideration.[6] Leonhardt then asked for a

---

[2]Docket entry # 14.

[3]Docket entry # 15.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 104.

[6]*Id*. at pp. 25-26 , 50 & 64.

hearing before an administrative law judge (ALJ).[7]  A hearing was held before an ALJ on April 6,

2005.[8]  The ALJ issued a decision on April 28, 2005 and concluded that Leonhardt is disabled

within the meaning of the Act.[9]  After reviewing the ALJ's decision, the SSA Appeals Council

remanded Leonhardt's case to the ALJ for further development of evidence about Leonhardt's

mental impairment.[10]  The ALJ obtained additional evidence, conducted a second hearing on

February 28, 2006,[11] and concluded that Leonhardt is not disabled under the Act.[12]  Leonhardt

asked for review of the ALJ's decision.[13] The SSA Appeals Council denied the request for review

on April 13, 2007, after determining that no basis existed for reviewing the ALJ's decision.[14]  The

ALJ's second decision became the final decision of the Commissioner for the purpose of the

district court's review pursuant to 42 U.S.C. § 405(g).  After receiving leave to proceed in forma

pauperis,[15] Leonhardt filed this action on May 22, 2007, seeking review of the Commissioner's

decision.[16]

---

[7]*Id*. at p. 67.

[8]*Id*. at pp. 319-35.

[9]*Id*. at pp. 32-36.

[10]*Id*. at pp. 40-42.

[11]*Id*. at pp. 336-63.

[12]*Id*. at p. 8.

[13]*Id*. at p. 7.

[14]*Id*. at p. 4.

[15]Docket entry # 2.

[16]Docket entry # 3.

## Issue Presented

Is the ALJ's decision that Leonhardt was not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[17] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[19]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[20] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[17]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[18]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[19]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[20]*Martinez*, 64 F.3d at 173.

judgment for that of the Commissioner.[21]  Conflicts in the evidence and credibility assessments are

for the Commissioner and not for the courts to resolve.[22]  Four elements of proof are weighed by

the courts in determining if substantial evidence supports the Commissioner's determination: (1)

objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education

and work experience.[23]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

application for benefits, and is under a disability, is eligible to receive benefits.[24]  The term

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."[25]  A claimant shall be determined to be disabled only if her physical or

mental impairment or impairments are so severe that he is unable to not only do her previous work,

but cannot, considering her age, education, and work experience, participate in any other kind of

substantial gainful work which exists in significant numbers in the national economy, regardless of

---

[21]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[22]*Martinez*, 64 F.3d at 174.

[23]*Id.*

[24]42 U.S.C. § 1382(a)(1) & (2).

[25]42 U.S.C. § 1382c(a)(3)(A).

whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[27]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[28]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[29]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[30]  The second step involves determining whether the claimant's impairment is severe.[31]  If it is not severe, the claimant is deemed not disabled.[32]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[33]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[34]  If the impairment is not on the list, the

---

[26]42 U.S.C. § 1382c(a)(3)(B).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[29]20 C.F.R. §§ 404.1520 and 416.920.

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[35]  If the claimant is still able to do her past work, the claimant is not disabled.[36]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[37]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[38]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[39]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[40]

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that Leonhardt had not engaged in substantial gainful activity since

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Leggett*, 67 F.3d at 564.

[39]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[40]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

her alleged onset date.[41]  At step two, the ALJ determined that Leonhardt is impaired by major depressive disorder, single episode, moderate severity; borderline intellectual functioning; high blood pressure; and obesity; the ALJ characterized these impairments as severe.[42]  At step three, the ALJ determined that Leonhardt's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[43]  At step four, the ALJ found that Leonhardt has the physical residual functional capacity to perform sedentary work with the following mental functional limitations: no limitation in the ability to understand and remember one or two step instructions, carry out one or two step instructions, or make simple work related decisions; mild limitation in the ability to remember locations and work-like procedures, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance; complete a normal work week without interruptions from psychologically based symptoms and to perform at a consistent pace without any unreasonable number and length of rest periods; interact appropriately with the general public, ask simple questions and request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain appropriate behavior and adhere to basic standards of neatness or cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals or make plans independently; and moderate limitation in the

_____

[41]SSA record, p. 20.

[42]*Id.*

[43]*Id.*

8

ability to carry out detailed instructions; maintain attention and concentration for extended periods; sustain ordinary routine without supervision; and work in coordination with or proximity to others without being distracted by them.[44]  At step five, the ALJ consulted a vocational expert and concluded that a significant number of jobs exist in the national economy that Leonhardt can perform.[45]  The ALJ concluded that Leonhardt is not disabled.[46]

## C.  Leonhardt's Allegation of Error

Leonhardt maintains that the ALJ erred by ignoring testimony by the medical expert and the vocational expert about her ability to sustain employment.[47]  Leonhardt relies on the medical expert's testimony that the record supports Dr. Timothy Bischoff's opinion that Leonhardt would have more than three absences a month.  This argument refers to a response to a question in a questionnaire completed by Dr. Bischoff on February 15, 2005.  Dr. Bischoff treats Leonhardt for depression.  In the response, Dr. Bischoff indicated that Leonhardt is likely to be absent from work more than three times a month due to her mental impairments or mental treatment.[48]  Because the vocational expert testified that a person who misses work more than three times a month would be unable to sustain competitive employment,[49] Leonhardt contends the ALJ erred in determining that she is not disabled because of depression.  This argument applies to Leonhardt's mental residual

---

[44]*Id*. at p. 21.

[45]*Id*.

[46]*Id*.

[47]Docket entry # 13, pp. 13-15.

[48]SSA record, p. 300.

[49]*Id*. at pp. 357-58.

functional capacity.  Thus, this report does not address Leonhardt's physical residual functional capacity.

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time.  A determination that a claimant is unable to continue working for significant periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence.[50]

In this case, neither Leonhardt's personal history nor medical evidence indicates that Leonhardt cannot maintain employment because of her mental impairment.  The ALJ did not ignore evidence about Leonhardt's ability to maintain employment, but made "specific notation" about that evidence and explained why Dr. Bischoff's opinion that Leonhardt's "inability to deal with stress and risk of missing more than 3 days of work per month due to [her] inability to deal with stress" is not entitled to controlling weight.[51]  The ALJ explained that the opinion is inconsistent with other substantial evidence in the record.  As discussed below, the ALJ is correct about the inconsistency.

Dr. Bischoff has treated Leonhardt for depression since April 2001 when Leonhardt first sought treatment.[52]  At that time, Leonhardt reported that her husband had been killed five years earlier, she had been going down-hill ever since, she moved to Texas to be closer to her parents and sister, and her youngest son received survivor's SSI.[53]  Her son's SSI terminated shortly afterwards when the son turned eighteen.  Although somewhat scant, Leonhardt's medical record

---

[50]*Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (citations omitted).

[51]*See* SSA record, p. 18, 1st full para.

[52]*Id*. at p. 169.

[53]*Id*. at pp. 169-74.

reflects that Dr. Bischoff has treated Leonhardt's depression with anti-depressant medications and group counseling sessions, but that Leonhardt has never been hospitalized.  Prior to Leonhardt's first hearing in April 2005, Leonhardt's representative asked Dr. Bischoff to complete a psychiatric/psychological impairment questionnaire.  Up to that point Dr. Bischoff never indicated that Leonhardt might have difficulties working, but his response to one question states that Leonhardt is likely to be absent from work more than three times a month.  According to vocational expert, a person who misses work more than three times a month would have difficulty maintaining employment for a significant period of time.  Dr. Bischoff's response is inconsistent with his other responses about Leonhardt's ability to perform work.  The other responses indicate that Leonhardt has no limitation or mild limitation in most work abilities.[54]  Dr. Bischoff indicates that Leonhardt has moderate limitation in four of eight abilities for sustained concentration and persistence: (1) to carry out detailed instructions, (2) to maintain attention and concentration for extended periods, (3) to sustain ordinary routine without supervision, and (4) to work in coordination with or proximity to others without being distracted by them.  These responses

---

[54]Dr. Bischoff's responses follow:

No limitation in the following abilities: to understand and remember one or two step instructions, to carry out one or two step instructions, and to make simple work related decisions.

Mild limitation in the following abilities:  to remember locations and work-like procedures; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting extreme behaviors; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel to unfamiliar places or use public transportation; and to set realistic goals or make plans independently.

indicate that Leonhardt can tolerate low stress jobs involving one or two steps and supervision, but she would have difficulty in jobs requiring detailed instructions and jobs without supervision. Notably, Dr. Bischoff indicated that Leonhardt is only mildly limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The ALJ must ordinarily give a treating physician's opinion considerable weight in determining whether a person is disabled, but the ALJ may reject the opinion of a physician when the evidence supports a contrary conclusion.[55]  The ALJ may assign little or no weight to a treating physician's opinion when the opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[56]  Dr. Bischoff's statement that Leonhardt would miss work more than three times a month is not supported by the medical record.  The medical record indicates that Leonhardt sees Dr. Bischoff every three months to obtain her anti-depressant medication[57] and that she periodically attends group counseling sessions.[58]  The frequency of those visits and sessions does not indicate Leonhardt would miss work more than three times a month.  Nothing in the treatment or counseling notes for those visits and sessions suggests that Leonhardt would miss work more than three times a month.  Instead, the record demonstrates that during the period of alleged disability, Leonhardt sought public assistance

---

[55]*See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[56]*See Newton*, 209 F.3d at 456.

[57]SSA record, p. 328.

[58]*Id*. at p. 239.

in obtaining employment,[59] completed 87.3 of 90 hours required for nurse's aide training,[60] worked

as a nurse's aide for two years from 2001 to 2003,[61] and responded to medication therapy.[62]  As a

result, the record contradicts Dr. Bischoff's response about missed work.  The ALJ resolved the

conflict, as is his prerogative,[63] by determining that Dr. Bischoff's opinion was not supported by

substantial evidence and thus not entitled to controlling weight.[64]

     As for Leonhardt's assertion that the medical expert testified likewise, the medical expert

only deferred to Dr. Bischoff's opinion.  During the hearing on April 6, 2005, when asked about

Dr. Bischoff's opinion that Leonhardt would miss work more than three times a month if she was

under stress and became distracted, discouraged, and anxious, the medical expert responded that

the opinion made sense.[65]  When asked about the issue during the hearing on February 28, 2006,

the medical expert deferred to Dr. Bischhoff as Leonhardt's tearing physician.[66]  Leonhardt's

characterization of the medical expert's testimony as being identical to Dr. Bischoff's opinion[67] is

over-stated.  The ALJ did not ignore the medical expert's testimony, but instead considered the

---

[59]*Id*. at pp. 127 & 171.

[60]*Id*. at p. 194.

[61]*Id*. at pp. 240 & 342.

[62]*Id*. at pp. 180, 287-89, 306 & 319.

[63]*Martinez*, 64 F.3d at 174 ("The Commissioner, rather than the courts, must resolve conflicts in the evidence.").

[64]*Id*. at p. 18.

[65]*Id*. at pp. 333-34.

[66]*Id*. at p. 353.

[67]Docket entry # 13, p. 12.

13

underlying opinion—Dr. Bischoff's statement about work absences—as unsupported.  Once the ALJ resolved the conflict, there was no need for the ALJ to address the vocational expert's testimony that a person who misses work more than three times a month would be unable to sustain competitive employment.  The ALJ did not err by failing to discuss the vocational expert's testimony.

Having addressed Leonhardt's allegation of error, the next question is whether substantial evidence supports the Commissioner's decision.  All evidence other than Dr. Bischoff's opinion that Leonhardt would miss more than three days of work per month supports the ALJ's decision: specifically, the report of psychological evaluation by Dr. Raymond O. Henke reporting that vocational prognosis is good,[68] a mental evaluation by Dr. Farrell A. Hillman opining that Leonhardt is not significantly limited in the ability to maintain regular work attendance and is capable of performing semi-skilled tasks,[69] the report of psychological evaluation by Dr. Paul S McCollum assessing Leonhardt's functional limitations and reporting that Leonhardt can handle stressful situations and that she does not demonstrate deficits in adaptive behavior,[70] and Leonhardt's testimony and statements about working after the death of her husband while suffering from depression.[71]  Substantial evidence supports the Commissioner's decision.  The ALJ made no error of law.

---

[68]SSA record, pp. 159-67.

[69]*Id*. at pp. 203-21.

[70]*Id*. at pp. 238-42.

[71]*Id*. at pp. 127-34, 324-25 & 341-43.

**Recommendation**

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Leonhardt's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[72] **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[73]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

---

[72]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[73]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

proposed factual findings and legal conclusions accepted by the district court.[74]

      **SIGNED** on July 21, 2008.


*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[74]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).